IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN DOE I, JOHN DOE II, JOHN DOE IV, and JOHN DOE V,<br><br>              Plaintiffs,<br><br>    vs.<br><br>DOUG PETERSON, Attorney General of the State of Nebraska, and JOHN BOLDUC, Superintendent of Law Enforcement and Public Safety for the Nebraska State Patrol, in their official capacities,<br><br>              Defendants. | **8:18CV507**<br><br><br>**MEMORANDUM AND ORDER** |

## I. INTRODUCTION

The applicability of Nebraska's Sex Offender Registration Act ("SORA"), Neb. Rev. Stat. § 29-4001 *et seq.*, extends to any person who "[e]nters the state and is required to register as a sex offender under the laws of another village, town, city, state, territory, commonwealth, or other jurisdiction of the United States." Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii).[1] As interpreted by the Nebraska Supreme Court, this language "require[s] registration in Nebraska … regardless of whether the registration in the other jurisdiction is based on a juvenile adjudication." *State v. Clemens*, 915 N.W.2d 550, 560 (Neb. 2018).

Because the *Clemens* decision was only concerned with whether there was a sufficient factual basis for a guilty plea to a charge of attempted violation of SORA

---

[1] The operative date of subdivision (a) of § 29-4003(1) is January 1, 1997, whereas the operative date of subdivision (b) is January 1, 2010.

by a defendant who was required to register as a sex offender in Colorado at the time he entered Nebraska, the Nebraska Supreme Court did not address collateral issues of whether "it would violate certain constitutional rights to require registration in Nebraska based on [an out-of-state] juvenile adjudication," or "whether it would be appropriate for Nebraska to make registration information public when the person is required to register in Nebraska based on a juvenile adjudication in another state and the person would not have been subject to public disclosure in the other state." *Id.* "Similarly, issues regarding the length of time one may be required to register in Nebraska based on a registration requirement from another state [were] outside the scope of [the *Clemens*] decision." *Id.*

I also found it unnecessary to decide these constitutional issues in an earlier 42 U.S.C. § 1983 action, when I erroneously predicted the Nebraska Supreme Court would give the term "sex offender" its ordinary meaning and hold "that subdivision (1)(a)(iv) of section 29-4003 only applies to a person who is required to register under the laws of another village, town, city, state, territory, commonwealth, or other jurisdiction of the United States as a person who has been convicted of a sex offense." *A.W. v. Peterson*, No. 8:14CV256, 2016 WL 1092477, at *9 (D. Neb. Mar. 21, 2016), *aff'd sub nom. A.W. by & through Doe v. Nebraska*, 865 F.3d 1014 (8th Cir. 2017).[2] I further stated that even if the term "sex offender" were ambiguous, "[i]nterpreting subdivision (1)(a)(iv) so as to include juvenile adjudications would be contrary to clear legislative intent." *Id.*, 2016 WL 1092477, at *9. Significantly, SORA's "registration requirement does not apply to a person who … [i]s a juvenile adjudicated 'delinquent' or 'in need of special supervision' by the juvenile courts in the state of Nebraska[.]" 272 Neb. Admin. Code ch. 19 § 003.05C. A panel of the United States Court of Appeals for the Eighth Circuit agreed with (and expanded upon) my analysis, and observed that even if the term "sex offender" were open to construction, "the application of SORA and its public notification requirement to

---

[2] *A.W.* involved a minor who was required to register in Minnesota based on a juvenile adjudication, but neither the fact of his registration nor any information that he would be required to provide to law enforcement officials in connection with his registration would be made public under Minnesota law. *See* 865 F.3d at 1016.

juveniles adjudicated delinquent in other jurisdictions but not in Nebraska raises serious constitutional concerns under the rights to travel and to equal protection of the laws." 865 F.3d at 1020, n. 3.

These constitutional issues were raised in another § 1983 action that was filed in 2018, shortly after the Nebraska Supreme Court's decision in *Clemens*. The "John Doe" Plaintiff, who had resided in Omaha since 2004, received a letter from the Nebraska State Patrol advising that he was required to register under SORA because he had been adjudicated delinquent in Iowa in 1999 for sexual abuse, when he was 14 years old. I determined that a preliminary injunction would not issue, and lifted a temporary restraining order, after finding that the plaintiff was not likely to prevail on the merits of either his equal protection claim or his right-to-travel claim. It was undisputed that the plaintiff was subject to a lifetime registration requirement under Iowa law, and that his registration information would be published on the Iowa Sex Offender registry website. Consequently, "Plaintiff's change of residency from Iowa to Nebraska ha[d] not been shown to have caused him any actual injury. Rather, the evidence show[ed] Plaintiff [was] seeking to benefit from SORA's exemption from registration of juveniles who are adjudicated delinquent in [Nebraska]." *Doe v. Peterson*, No. 8:18CV422, 2018 WL 5255179, at *6 (D. Neb. Oct. 22, 2018). The case subsequently was dismissed voluntarily.

In the instant case, four "John Doe" Plaintiffs (numbered I, II, IV and V)[3] each claim to be disadvantaged by moving to Nebraska because they were adjudicated delinquent in states where their registration information is not made public. They claim SORA's registration and notification requirements violate their rights under "(1) the Equal Protection Clause, (2) the third prong of the Right to Travel arising from the Privileges or Immunities Clause, Section 1, Clause 2, of the Fourteenth Amendment, (3) the Privileges and Immunities Clause, Article IV, Section 2, Clause 1, (4) the Ex Post Facto Clause, Article I, Section 10, Clause 1, (5) the Substantive

---

[3] John Doe III withdrew from the case on January 9, 2019, after being advised that the Nebraska State Patrol would not require him to register. (See Filing 18.)

Component of the Fourteenth Amendment and (6) the Eighth Amendment of the United States Constitution." (Filing 35, pp. 1-2 (numbering added).) Plaintiffs seek a declaration that Neb. Rev. Stat. § 29-4003(1)(a)(iv) and (b)(iii) are unconstitutional as applied, and they request a permanent injunction that will prohibit Defendants, the Attorney General of the State of Nebraska and the Superintendent of Law Enforcement and Public Safety for the Nebraska State Patrol, in their official capacities, from enforcing those SORA provisions against Plaintiffs. (*Ibid.,* p. 10.)

The matter is now before me on a motion for partial summary judgment filed by Plaintiffs with respect to their equal protection and right-to-travel claims (Filing 52), and on a motion for summary judgment filed by Defendants with respect to all claims (Filing 48). For the reasons discussed below, I will grant Defendants' motion, deny Plaintiffs' motion, and dismiss this case with prejudice. I will also dissolve the temporary restraining order that was entered on January 9, 2019, and has remained in effect since then by agreement of the parties.[4] (Filing 18.)

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[4] The TRO states: "The Defendants, and all their agents, servants, employees (including County Attorneys) are temporarily restrained from enforcing Neb. Rev. Stat. § 29-4003(1)(a)(iv) and Neb. Rev. Stat. § 29-4003 (1)(b)(iii) against Does I, II and IV. This temporary restraining order shall remain effective until the issuance of a decision on the preliminary injunction request." (Filing 18, p. 2.) The TRO was extended to John Doe V on March 20, 2019, after he joined the litigation. (Filing 31.) No hearing on the preliminary injunction request was held because the parties jointly moved for a continuance, and rescheduling was never requested. Case progression deadlines were also stayed while the Nebraska Legislature considered legislation that could have rendered the case moot. (See Filings 34, 38-40.)

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).[5]

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

## III. STATEMENT OF FACTS

The parties have stipulated that all four John Doe Plaintiffs currently reside in Nebraska. (Filing 47, ¶¶ 1-4.) They have further stipulated that each Plaintiff was

---

[5] "The filing of cross-motions does not concede the absence of a triable issue of fact. The court is bound in such cases to deny both motions if it finds ... there is actually a genuine issue of material fact." *Jacobson v. Md. Cas. Co.,* 336 F.2d 72, 75 (8th Cir. 1964). When faced with cross-motions, the normal course for the trial court is to "consider each motion separately, drawing inferences against each movant in turn." *Id.* (quoting *EEOC v. Steamship Clerks Union, Local 1066,* 48 F.3d 594, 603 n. 8 (1st Cir. 1995)). That is to say, "the court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the light most favorable to defendant when considering plaintiff's motion." *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019) (citing *Weber v. Travelers Home & Marine Ins. Co.*, 801 F.Supp.2d 819, 825 (D. Minn. 2011)).

adjudicated delinquent for committing a sex offense in another jurisdiction and, as a result, was required to register as a sex offender in that jurisdiction at the time he entered Nebraska. (*Ibid.*, ¶¶ 11, 16, 20, 24.) It is therefore undisputed that the Nebraska State Patrol would apply Neb. Rev. Stat. § 29-4003(1)(a)(iv) and (b)(iii) to each of the four Plaintiffs. (*Ibid.*, ¶ 28.)

*Plaintiff John Doe I*

On or about 2016, a petition was filed in a State of Michigan Judicial Circuit, Family Division, Court alleging Plaintiff John Doe I committed certain Sex Offender Registration and Notification Act ("SORNA")[6]-registerable offenses in violation of Michigan law in 2015, when he was 15 years old. In January 2017, he pled guilty to two counts of Criminal Sexual Conduct – Third Degree in violation of MCL 750.520d(1)(a) and two counts of Possession of Child Sexually Abusive Material in violation of MCL 750.145c(4), and also pled no-contest to two counts of Using a Computer to Commit a Crime in violation of MCL 752.796 and MCL 752.797(3)(e). Plaintiff John Doe I was adjudicated a temporary ward of the juvenile court for having committed the criminal offenses, but was discharged in April 2018. As a result of the above adjudication, John Doe I is subject to a lifetime sex offender registration requirement by the State of Michigan and was required by the State of Michigan to register as a sex offender on the Michigan non-public registry at the time he left the State of Michigan and entered the State of Nebraska. Non-public sex offender registration in Michigan does not include public notification via the Michigan Sex Offender Registry website. (*Ibid.*, ¶¶ 7-11.)

Plaintiff John Doe I, by and through his attorney, contacted the Nebraska State Patrol in October 2017 and was informed by the Nebraska State Patrol that he would not be required to register under SORA if he moved to Nebraska following the

---

[6] SORNA, which was enacted as Title I of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, requires every jurisdiction to maintain a sex offender registry conforming to federal requirements or else lose federal funding. *See* 34 U.S.C. §§ 20912, 20927.

Eighth Circuit's decision in *A.W. by and through Doe v. State*, *supra*. Plaintiff John Doe I, by and through his attorney, again contacted the Nebraska State Patrol in June of 2018 to confirm that he would not have to register as a sex offender if he moved to Nebraska. He subsequently moved to Nebraska. (*Ibid.*, ¶¶ 12, 13.)

*Plaintiff John Doe II*

In June 2011, Plaintiff John Doe II was adjudicated delinquent of one count of Sexual Abuse of a Child less than 12 years old in violation of Alabama Code § 13A-6-69.1, a SORNA-registerable offense. He was sixteen years-old on the date of the offense. As a result of the above adjudication, Plaintiff John Doe II is subject to a ten-year sex offender registration requirement and was required by the State of Alabama to register as a sex offender on the Alabama non-public registry at the time he left the State of Alabama and entered the State of Nebraska. Non-public sex offender registration in Alabama does not include public notification via the Alabama Sex Offender Registry website. (*Ibid.*, ¶¶ 14-17.)

*Plaintiff John Doe IV*

Plaintiff John Doe IV was adjudicated delinquent of a SORNA-registerable offense in violation of Washington law. In October 1990, he pled guilty to one count of Child Molestation – First Degree in violation of RCW 9A.44.083 and two counts of Assault – Fourth Degree in violation of RCW 9A.36.041. He was 12 and 13 years old on the dates of the offenses. As a result of the above adjudication, Plaintiff John Doe IV is subject to a lifetime sex offender registration requirement in the State of Washington and was required by the State of Washington to register as a sex offender on the Washington non-public registry at the time he left the State of Washington and entered the State of Nebraska. Non-public sex offender registration in Washington does not include public notification via the Washington Sex Offender Registry website. (*Ibid.*, ¶¶ 18-21.)

*Plaintiff John Doe V*

Plaintiff John Doe V was adjudicated delinquent of SORNA-registerable offenses in violation of Colorado law. In August 1994, he pled guilty to one count of Third Degree Sexual Assault, and in July 1995, he pled guilty to one count of Sexual Assault of a Child in a Position of Trust. He was 10 and 12 years old on the dates of the offenses. The parties have stipulated that as a result of the above adjudications, Plaintiff John Doe V is subject to a lifetime sex offender registration requirement and was required by the State of Colorado to register as a sex offender in Colorado at the time he left the State of Colorado and entered the State of Nebraska. (*Ibid.,* ¶¶ 23- 24.)

However, Plaintiff John Doe V has since stated in an affidavit that he was required by the State of Colorado to register as a sex offender for a period of ten years. (Filing 55-1, ¶ 5.) After receiving this affidavit, defense counsel investigated this statement and determined Plaintiff John Doe V filed a petition in 2010 to discontinue sex offender registration in Colorado. (Filing 63, p. 7; Filing 62.) In Colorado, sex offenders must continue to register until the court releases them from this requirement. *See* Colo. Rev. Stat. Ann. § 16-22-113. Defense counsel also submitted a request to the Colorado court for a copy of any order entered on the petition, but has not yet received a response. Defendants assert Plaintiff John Doe V's claims are moot if he is no longer required to register as a sex offender in Colorado. (Filing 63, p. 7.)

Plaintiff John Doe V also stated in his affidavit that he was deemed a low risk to reoffend by the State of Colorado, that he was not placed on the Colorado sex registry website, and that he was never made aware, and has no personal knowledge, that information about his sex offender registration was made public in any manner whatsoever by the State of Colorado. (Filing 55-1, ¶¶ 6, 8, 9.) Defendants, citing Colo. Rev. Stat. Ann. § 16-22-112(2), maintain that if Plaintiff John Doe V had remained in Colorado, his registration as a sex offender would be publicly available to any person residing within the jurisdiction of a local law enforcement agency he

registered with, and may even have been posted on that agency's website. (Filing 63, pp. 1-2.)[7]

*Nebraska Sex Offender Registration Act*

Juveniles adjudicated delinquent of certain SORNA-registrable offenses in Nebraska juvenile courts are not required to comply with the Nebraska Sex Offender Registration Act (SORA). But juveniles convicted of certain SORNA-registrable offenses in Nebraska adult courts are required to comply with SORA, which includes public notification via the Nebraska Sex Offender Registry website. (Filing 47, ¶¶ 25-26.)

The Nebraska State Patrol applies Neb. Rev. Stat. § 29-4003(1)(a)(iv) and (b)(iii) to out-of-state juveniles, and would apply those statutes to Nebraska resident juveniles who enter the State of Nebraska and are required to register in another jurisdiction. The Nebraska State Patrol's application of these provisions is not based on how long a person has resided in Nebraska or if the person resided in Nebraska prior to entering the State as described in Neb. Rev. Stat. §29-4003(1)(a)(iv) and (b)(iii). Nor is the Nebraska State Patrol's application of these statutory provisions limited to persons born outside of Nebraska or to persons who lived in another state at the time of their conviction or adjudication. (*Ibid.*, ¶¶ 27, 29, 30.)

Under Neb. Rev. Stat. § 29-4003(1)(a)(iv) and (b)(iii), it is the out-of-state registration requirement that triggers the registration requirement in Nebraska, not the residence of the person at the time of the underlying offense's commission. (Filing 50-2, p. 6.) Thus, an out-of-state resident with an out-of-state adjudication requiring registration in the other state is not treated differently than a lifelong Nebraska resident with an out-of-state adjudication requiring registration in the other state. (Filing 51-2, p. 1.)

---

[7] Any unresolved issues of fact regarding Plaintiff John Doe V's status do not prevent entry of summary judgment in favor of Defendants.

# IV. ANALYSIS

## A. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment ... is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where, as here, a plaintiff has not shown discrimination based on membership in a class or group, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff *in all material respects.*" *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

Plaintiffs contend they are deprived of equal protection "because persons who are adjudicated delinquent as juveniles in Nebraska are not required to register as sex offenders under SORA subject to public notification via a sex offender registry website." (Filing 56 at p. 2.) Plaintiffs claim it is immaterial they were adjudicated delinquent as juveniles in Michigan, Alabama, Washington, and Colorado, rather than in Nebraska. (*Ibid.*) Plaintiffs are mistaken.

While I still find it hard to believe that "the Nebraska statutes were intended to be more punitive to juveniles adjudicated out of state as compared to juveniles adjudicated in Nebraska," *A.W. v. Peterson*, 2016 WL 1092477, at *10, the Nebraska Supreme Court has read Neb. Rev. Stat. § 29-4003(1)(a)(iv) to mean that "whether one is 'required to register as a sex offender' in another jurisdiction is determined under the laws of the other jurisdiction rather than under Nebraska law." *Clemens*,

915 N.W.2d at 557. "Section 29-4003(1)(a)(iv) adds no additional requirement that registration in the other jurisdiction must be based on a "conviction" or an offense that would have required the person to register in Nebraska if the offense had been committed in Nebraska." *Id.*

The Nebraska Supreme Court described § 29-4003(1)(a)(iv) as an "external approach" statute, which "requires registration in this state when the person was required to register as a sex offender in the other jurisdiction." *Id.*, at 558-59. By contrast, an "internal approach" statute "requires that out-of-state convictions, and any punishment resulting from those convictions, satisfy the eligibility requirements of the forum state's registration ... law." *Id.*, at 558 (quoting Wayne A. Logan, *Horizontal Federalism in an Age of Criminal Justice Interconnectedness*, 154 U. Pa. L. Rev. 257, 261 (2005)). "The external approach … results in … unequal treatment of otherwise similarly situated individuals." Logan, 154 U. Pa. L. R., at 262.

Plaintiffs argue this is an unfair result, and they should be treated the same as persons who are adjudicated delinquent in Nebraska. But "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* "Under rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366-67 (2001) (quoting *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 441 (1985)). "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.*, at 367 (quoting *Heller v. Doe,* 509 U.S. 312, 320 (1993)).

11

Defendants contend "[i]t was not irrational for the Nebraska Legislature, when enacting a law to fit within a comprehensive national system, to recognize that other state laws may differ and to elect not to keep track of every change in law in those jurisdictions." (Filing 63 at p. 3.) However, "ease-of-administration, on its own, is not sufficient to justify an otherwise irrational legislative enactment." *Borman's, Inc. v. Michigan Prop. & Cas. Guar. Ass'n*, 925 F.2d 160, 163 (6th Cir. 1991) (citing *United States Dep't of Agriculture v. Murry*, 413 U.S. 508, 513 (1973)). And, it should be noted, the Nebraska Legislature also adopted an "internal approach" in SORA by requiring the registration of any person who "[h]as ever pled guilty to, pled nolo contendere to, or been found guilty of any offense that is substantially equivalent to a registrable offense [in Nebraska] under subdivision (1)(a)(i) [or subdivision (1)(b)(i)] of this section by any village, town, city, state, territory, commonwealth, or other jurisdiction of the United State…." Neb. Rev. Stat. § 29-4003 (1)(a)(ii) & (b)(ii). This provision necessarily requires keeping track of the laws of other states.

Still, it would not be irrational for the Nebraska Legislature to conclude as a matter of public policy that a person entering the state who is required to register as a sex offender in another jurisdiction must also register here, even though their offense, had it been committed in-state, would not require registration under Neb. Rev. Stat. § 29-4003(1)(a)(i) and (b)(i). Indeed, this approach is entirely consistent with national policy. When enacting SORNA, Congress declared that "in order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators," it was establishing a "comprehensive national system for registration of those offenders." *United States v. Baccam*, 562 F.3d 1197, 1198 (8th Cir. 2009) (quoting former 42 U.S.C. § 16901, now 34 U.S.C. § 20901). "By the time that SORNA was enacted in 2006, every State and the District of Columbia had enacted a sex offender registration law, …. Thus, with SORNA, ... Congress wanted to make sure sex offenders could not avoid all registration requirements just by moving to another state." *United States v. Guzman*, 591 F.3d 83, 91 (2d Cir. 2010), *as amended* (Jan. 8, 2010). Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii), which classify those who need to register as sex offenders elsewhere as

persons who must register as sex offenders in Nebraska upon their entry into the state, is rationally related to the accomplishment of Congress's goal, and does not offend equal protection. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911)).

B. Substantive Due Process

To address Plaintiffs' substantive due process claim, the court "must determine whether the registration statute implicates a fundamental right." *Gunderson v. Hvass* 339 F.3d 639, 643 (8th Cir. 2003). "If the statute implicates a fundamental right, the state must show a legitimate and compelling governmental interest for interfering with that right." *Id*. "If the statute does not implicate a fundamental right, [the court will] apply a less exacting standard of review under which the statute will stand as long as it is rationally related to a legitimate governmental purpose." *Id*.

For their substantive due process claim, Plaintiffs argue violations of their "fundamental right to privacy and liberty." (Filing 35, ¶ 44.) "Although the Supreme Court has recognized fundamental rights in regard to some special liberty and privacy interests, it has not created a broad category where any alleged infringement on privacy and liberty will be subject to substantive due process protection." *Doe v. Moore,* 410 F.3d 1337, 1343 (11th Cir. 2005) (reviewing Florida Sex Offender Act registration and public notification under rational relationship test); *see Doe v. Nebraska*, 734 F. Supp. 2d 882, 927 (D. Neb. 2010) (Kopf, J.) (substantive due process challenge to SORA reviewed under rational relationship test). When a "rational basis" passes equal protection review, it "also satisfies substantive due process analysis." *Executive Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 569 (8th Cir. 2008). Plaintiffs' substantive due process claims, like their equal protection claims, fail as a matter of law.

13

C. Right to Travel

The right to travel has three different components: 1) the right of a citizen of one state to enter and leave another state, 2) the right to be a welcome visitor, not an unfriendly alien, when temporarily present in another state, and 3) for those travelers who become permanent residents, the right to be treated like other citizens of that state." *Hughes v. City of Cedar Rapids,* 840 F.3d 987, 995 (8th Cir. 2016). Plaintiffs' as-applied challenges in this case involve the third component, which is protected by the Privileges or Immunities Clause of the Fourteenth Amendment, coupled with the Citizenship Clause of that amendment. *See Saenz v. Roe*, 526 U.S. 489, 503 (1999).[8]

Plaintiff's right-to-travel claims fail because they are unable to demonstrate any differential treatment. Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii) "merely require that if a person residing in [Nebraska] has at any time been ordered to register as a sex offender by a jurisdiction other than [Nebraska], then that person must also register as a sex offender under [Nebraska] law." *Doe v. Jindal*, No. CV 15-1283, 2015 WL 7300506, at *9 (E.D. La. Nov. 18, 2015) (dismissing right-to-travel claim challenging provision of Louisiana law that if a person is convicted of a sex offense in another state, and that state's period of registration for the offense is longer than the registration period Louisiana law would require, then the registration period

---

[8] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; ...." U.S. Const., amend. XIV, § 1. The Privileges and Immunities Clause of Article IV, providing that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," U.S. Const., art. IV, § 2, protects the second right-to-travel component. *See Saenz*, 526 U.S. at 501. Although this clause is cited in Plaintiffs' Third Amended Complaint, it is expressly alleged that their claims are based on the "third prong" of the right to travel. (See Filing 35, pp. 1, 7.) It is also alleged that each Plaintiff is a current resident of Nebraska, and the parties have so stipulated. (Filing 35, ¶¶ 3-6; Filing 47, ¶¶ 1-4.)

required by the offender's state of conviction applies). "The challenged statutes treat an out-of-state resident with an out-of-state [juvenile adjudication] and a lifelong [Nebraska] resident with an out-of-state [juvenile adjudication] the same way." *Id. See also Doe v. Neer*, 649 F. Supp. 2d 952, 956 (E.D. Mo. 2009) (dismissing right-to-travel claim because factors requiring registration for out-of-state sex offense conviction were residentially neutral).

Plaintiffs suggest that if the registration requirements of Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii) pass constitutional muster, I could still "enjoin [Defendants] from enforcing the public notification provisions of SORA[9] as to Plaintiffs." (Filing 61 at pp. 2-3.) In other words, I "could require Plaintiffs to register with the Nebraska State Patrol and merely enjoin Defendants from publicly disseminating Plaintiffs['] registration information." (*Ibid.*, at p. 3.) Plaintiffs contend Nebraska should give effect to the laws of Michigan, Alabama, Washington, and Colorado as a matter of comity, by not publicly releasing Plaintiffs' registration information, but Plaintiffs are unable to shown that SORA's public notification provision is unconstitutional as applied to them. Public notification is simply one consequence of the registration requirement, and does not require further analysis.

Even though I agree it is incongruous for the Nebraska Legislature to refuse to implement SORNA's requirement for registration of juvenile sex offenders, *see* 34 U.S.C.A. § 20911(8), while at the same time failing to provide an exception in the public notification provision for persons who register because of out-of-state

---

[9] Information obtained under SORA is not confidential, except that certain information can only be disclosed to law enforcement agencies. *See* Neb. Reb. Stat. § 29-4009(1); *see also* 24 U.S.C. § 20920 (SORNA disclosure requirements and exemptions). "The release of information authorized by this section shall conform with the rules and regulations adopted and promulgated by the Nebraska State Patrol pursuant to section 29-4013." Neb. Rev. Stat. § 29-4009(3). "The procedures for release of information established by the Nebraska State Patrol shall provide for law enforcement and public notification using electronic systems." Neb. Rev. Stat. § 29-4013(2)(b).

juvenile adjudications,[10] any corrective action must come from the Legislature, not the courts.

D. Ex Post Facto Clause

The States are prohibited from enacting an ex post facto law. U.S. Const., Art. I, § 10, cl. 1. A law that violates the clause "must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (footnotes omitted). Plaintiffs claim to be disadvantaged by being treated as convicted criminals rather than as adjudicated juvenile delinquents, but the registration requirement of Neb. Rev. Stat. § 29-4003(1)(a)(iv), was enacted in 2006, *see* Nebraska Laws 2006, LB 1199, § 18, and it operates prospectively. Registration is only required if a person enters Nebraska on or after January 1, 1997, and, as of the date of entry, is already required to register as a sex offender in another jurisdiction.[11] Plaintiffs had "fair warning" of the registration requirement when they entered Nebraska, and no change has been made to the registration requirement over the years. *See Weaver*, 450 U.S. at 28-29 ("Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.").

---

[10] To comply with SORNA, "each jurisdiction shall make available on the Internet, in a manner that is readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry." 34 U.S.C. § 20920. But SORNA also authorizes the United States Attorney General to create exemptions from the public notification requirement. 34 U.S.C. § 20920(c)(4). The Attorney General has exercised this authority to "[a]llow jurisdictions, in their discretion, to exempt information concerning sex offenders required to register on the basis of juvenile delinquency adjudications from public Web site posting." Supplemental Guidelines for Sex Offender Registration and Notification, 76 Fed. Reg. 1630, 1631 (January 11, 2011).

[11] Although Neb. Rev. Stat. § 29-4003(1)(b)(iii) has a later operative date, its registration requirement is a redundancy.

Although Plaintiffs have not defended the merits of their ex post facto claim, except to state that "Defendant[s] have merely recited legal arguments" (Filing 61, p. 5), I understand from their pleadings that Plaintiffs claim to be disadvantaged because, *inter alia*, "[t]he State of Nebraska seeks to restrict where Plaintiffs can live and work," "to require Plaintiffs to report to law enforcement within three (3) working days prior to any 'change in address, temporary domicile or habitual living location,' or 'becoming employed, carrying on a vocation or attending school', or any changes thereof," and "to require Plaintiffs to report in person to the county sheriff's office at least once a year." (Filing 35, ¶¶ 39-42.) Plaintiffs do not allege that similar restrictions or requirements were not imposed in the states where they were required to register as sex offenders before moving to Nebraska, but, in any event, the Nebraska restrictions and requirements are not retrospective in nature. As the United States Court of Appeals for the Seventh Circuit explained in upholding SORNA against and Ex Post Facto Clause[12] attack:

> We recognize that SORNA imposes significant burdens on sex offenders who, like Leach, may have committed their crimes and completed their prison terms long before the statute went into effect. Leach must register in every jurisdiction where he lives, works, or goes to school; he must notify government officials within three business days of changing his residence; he must furnish the government with fingerprints, a photograph, a physical description of himself, vehicle identification information, and any other materials required by the Attorney General. 42 U.S.C. § 16913-14. All of these requirements are triggered without respect to the date of the convictions: federal guidelines say that an offender who was convicted before SORNA was enacted must comply with them. 28 C.F.R. § 72.3. But that does not make them retrospective: SORNA merely creates new, prospective legal obligations based on the person's prior history.

*United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011); *see also Vasquez v.* Foxx, 895 F.3d 515, 520 (7th Cir. 2018) ("SORNA's registration duty and the criminal

_____

[12] Because SORNA is a federal law, the applicable Ex Post Facto Clause is found in Article I, Section 9, of the United States Constitution.

penalty for failure to comply are plainly *prospective* in operation. In other words, the new regulatory scheme applies only to conduct occurring *after* the law's enactment—that is, a sex offender's failure to register or update his registration following interstate travel." (emphasis in original)).

"To violate the Ex Post Facto Clause, moreover, a law must be both retrospective *and* penal." *Leach*, 639 F.3d at 773 (finding SORNA's registration requirements to be regulatory). "The mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, …." *De Veau v. Braisted*, 363 U.S. 144, 160 (1960) (provision of New York Waterfront Commission Act which in effect disqualified ex-felons from waterfront union office was not an ex post facto law).

"The Ex Post Facto Clause of the United States Constitution does not apply to civil procedures, such as sex offender registration, unless they are sufficiently 'punitive either in purpose or effect.'" *Bacon v. Neer*, 631 F.3d 875, 877 n. 1 (8th Cir. 2011) (quoting *Smith v. Doe,* 538 U.S. 84, 92 (2003)). The Nebraska Supreme Court, "like the overwhelming majority of courts that have examined similar sex offender registration statutes, … [has] conclude[d] that in enacting SORA, the Legislature intended to create a civil, nonpunitive regulatory scheme." *Slansky v. Nebraska State Patrol*, 685 N.W.2d 335, 352 (Neb. 2004) (citations omitted). The Nebraska Supreme Court also concluded in *Slansky* that the effects of SORA's then-existing community notification provisions were not so punitive as to negate the Legislature's intent. *Id*., at 380-83. I find the same to be true of SORA's current provisions for public notification. Other provisions of SORA that Plaintiffs reference in their Third Amended Complaint are likewise regulatory, non-punitive measures. *See Doe v. Nebraska*, 734 F. Supp. 2d 882, 913-21 (D. Neb. 2010) (Kopf, J.) (newly enacted SORA provisions imposing new in-person reporting requirements, requiring that certain information regarding all registered offenders be disclosed to the public

via a website, and replacing a system of individualized risk assessments of sex offenders with an "offense of conviction" methodology did not violate the Ex Post Facto Clauses of the United States and Nebraska Constitutions; provisions were not punitive but instead were enacted to bring Nebraska's SORA into compliance with the federal SORNA); *State v. Worm*, 680 N.W.2d 151, 159-63 (Neb. 2004) (purpose or effect of SORA's lifetime registration provisions was not so punitive as to negate Legislature's intent to create civil regulatory scheme); *State v. Boche*, 885 N.W.2d 523, 531 (Neb. 2016) (SORA's lifetime registration requirement not punishment as to juvenile defendants).

E. Eighth Amendment

Finally, Plaintiffs allege that "maintaining the sex offender registry, requiring internet publication of information on the registry, and permitting republication of the information by private websites have effects that are analogous to the historical punishment of shaming and further resemble and threaten to result in banishment …"; that "SORA imposes affirmative disabilities or restraints that resemble parole or probation in its requirements of frequent in-person reporting, …"; that "SORA promotes traditional aims of punishment, namely retribution and deterrence"; and that "SORA's registration and disclosure requirements … are excessive in relation to SORA's expressed public safety objective." (Filing 35, ¶¶ 48-51.) These features, Plaintiffs claim, amount to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Again, however, Plaintiffs have failed to defend this claim in responding to Defendants' motion for summary judgment.

My previous finding that SORA's provisions are non-punitive also disposes of Plaintiffs' Eighth Amendment claim. *See Doe v. Miller*, 405 F.3d 700, 723 n. 6 (8th Cir. 2005) ("In view of our conclusion that the statute is not punitive, it follows that the law is not a 'cruel and unusual punishment' in violation of the Eighth Amendment."); *Doe v. Nebraska*, 734 F. Supp. 2d at 922 (Eighth Amendment claim failed because "SORA's registration and notification requirements do not constitute punishment.").

## V. CONCLUSION

The registration requirement of Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii), and SORA's public notification, do not violate Plaintiff's constitutional rights to equal protection, due process, or travel, nor do these statutory provisions violate the Ex Post Facto Clause or the Eighth Amendment's prohibition against cruel and unusual punishment. Defendants' motion for summary judgment will be granted in all respects, and Plaintiffs' motion for partial summary judgment will be denied. This case will be dismissed with prejudice, and the temporary restraining order preventing Defendants from enforcing of Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii) against Plaintiffs will be dissolved.

IT IS ORDERED:

1.     Defendants' Motion for Summary Judgment (Filing 48) is granted, and this case is dismissed with prejudice.

2.     Plaintiffs' Motion for Partial Summary Judgment (Filing 52) is denied.

3.     The temporary restraining order entered in favor of Plaintiff John Does I, II, and IV on January 9, 2019 (Filing 18), and in favor of Plaintiff John Doe V on March 20, 2019 (Filing 31), is dissolved.

4.     Judgment shall be entered by separate document.

Dated this 23rd day of March, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge